Ralph and Karen **PAGEL**, Plaintiffs,

v.

**BURLINGTON NORTHERN SANTA FE RAILWAY COMPANY,** Defendant.

No. CIV.A. 02–2116–CM.

United States District Court, D. Kansas.

Feb. 10, 2004.

Robert V. Eye, Irigonegaray & Associates, Topeka, KS, for Plaintiffs.

Larry G. Pepperdine, Steven R. Fabert, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Defendant.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

The instant action arises out of an incident occurring on March 15, 2000, at which time an AMTRAK train derailed, and some of its cars overturned. This matter is before the court on Motion of Defendant Burlington Northern Santa Fe Railway Company for Summary Judgment (Doc. 20).

## I. Facts [1]

Plaintiffs Ralph and Karen Pagel are the owners of farmland in Osage County, Kansas. Plaintiffs' land is crossed by railroad tracks owned by defendant Burlington Northern Santa Fe Railway Company. Plaintiffs reside on a portion of the property, and the remainder is agricultural land farmed by share cropper tenants.

On the night of March 15, 2000, an AMTRAK passenger train was traveling along defendant's railroad tracks when it derailed, overturning some of its cars. The AMTRAK train was neither owned nor operated by defendant, and there is nothing in the record to suggest that the derailment was the result of any negligent act or omission of defendant.

Following the derailment, emergency personnel arrived to render aid and begin cleanup. Ralph Pagel gave the cleanup crews express permission to come onto plaintiffs' farm land to render aid and perform cleanup work. There is a factual dispute as to what Ralph Pagel was told after this initial interaction. Unfortunately, both parties cite to Ralph Pagel's deposition testimony, but neither party attached to their briefs the relevant portions of Ralph Pagel's deposition. Defendant claims that Ralph Pagel was told the morning after the derailment that the cleanup would be performed by Hulcher Services, Inc. (Hulcher). In fact, the record contains a contract which provides that Hulcher would perform the cleanup as an independent contractor. Plaintiffs assert that Ralph Pagel spoke with defendant's employees about the derailment cleanup and that defendant's employees were present during the post-derailment activities. Ralph Pagel claims that defendant's employees represented to him on May 16,

---

1. The court construes the facts in the light most favorable to plaintiff as the non-moving party pursuant to Fed.R.Civ.P. 56.

2000, that a landscaper would put the property back to the same condition it was before the accident.

On April 29, 2000, apparently during the cleanup, plaintiffs discovered discarded batteries on their property. Defendants do not deny that in 1974 it replaced the type of battery system used for the signal system along the tracks passing over plaintiffs' property. Defendant contends, and plaintiffs do not dispute, that no batteries were used or discarded along the track after 1974.

Defendant entered into a Voluntary Cleanup and Property Redevelopment Program Agreement with the Kansas Department of Health and Environment (KDHE) regarding cleanup of the batteries. Pursuant to the agreement, defendant has cleaned and removed discarded batteries on multiple occasions.

Plaintiffs claim that defendant's removal of debris resulting from the train derailment was incomplete and inefficient and that defendant's disposal of batteries damaged plaintiffs' property. Plaintiffs allege the following causes of action: (i) trespass, (ii) negligence, (iii) negligence per se, (iv) nuisance, (v) misrepresentation, (vi) invasion of privacy, and (vii) breach of implied contract.

## II. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable

substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed to secure the just, speedy

and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

### A. Discarded Batteries—Statute of Limitations

There exists no evidence in the record that the batteries were discarded any later than 1974. As such, all of the batteries found on plaintiffs' property had been present at least twenty-five years prior to their discovery. Defendant argues that all claims relating to the discarded batteries are time-barred. The court agrees.

Kan. Stat. Ann. § 60–513 requires trespass and other tort actions to be brought within two years of injury or ascertainment of the injury. Plaintiffs contend that, when the injury arising therefrom is concealed or delayed, the limitation period is triggered when the injury is ascertainable, not on the date of the wrongful act. In support, plaintiffs cite *Olson v. KDOT,* 235 Kan. 20, 23, 679 P.2d 167 (1984). *Olson,* however, was decided before § 60–513 was amended.

In 1987, the legislature amended § 60–513 to provide:

> (b) Except as provided in subsection (c), the causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, *but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.*

Kan. Stat. Ann. § 60–513(b) (emphasis added). The Kansas courts have held that the legislature intended the 1987 amendment to § 60–513(b) to be a statute of repose, with ten years from the occurrence of the act giving rise to the cause of action as the absolute limit for filing actions. *Harding v. K.C. Wall Prods., Inc.,* 250 Kan. 655, 831 P.2d 958 (1992); *Dobson v. Larkin Homes, Inc.,* 251 Kan. 50, 832 P.2d 345 (1992). "The plain language of K.S.A. 1991 Supp. 60–513 and the applicable case law require that after July 1, 1989, a negligence action must be brought within 10 years of the original wrongful act or the action is barred." *Admire Bank & Trust v. City of Emporia,* 250 Kan. 688, 698, 829 P.2d 578 (1992).

In this case, the alleged wrongful act-defendant's discarding of the batteries-occurred at least twenty five years ago. As such, any claims relating to the batteries is barred by § 60–513.

### B. Derailment Cleanup

#### 1. Trespass and Nuisance Claims

The parties have done a less than adequate job setting forth the specific conduct about which plaintiffs complain. This, coupled with the absence of Ralph or Karen Pagel's deposition testimony, leaves the court in an awkward position of determining which claims survive summary judgment.

As best the court can discern, plaintiffs' trespass and nuisance claims are based on the presence of unwelcomed sightseers, derailment debris, and trash on plaintiffs' property. Defendant contends that plaintiffs' trespass and nuisance claims fail because Ralph Pagel consented to the cleanup activity and because no personnel of defendant either was present or placed property (derailment debris or trash) on plaintiffs' land.

Under Kansas law, to establish a claim for trespass, a plaintiff must prove that defendants are persons "who enter[ ] or remain[ ] upon land in the possession of

another without a privilege to do so created by the possessor's consent or otherwise." *Riddle Quarries v. Thompson*, 177 Kan. 307, 311, 279 P.2d 266 (1955). More specific to this case, "the doing of an act which will almost certainly result in the entry of foreign matter upon another's land . . . suffices for an intentional trespass to land, regardless of the lack of an intent to harm." *United Proteins, Inc. v. Farmland Indus., Inc.*, 259 Kan. 725, 729, 915 P.2d 80 (1996) (citing Am.Jur.2d, Trespass § 29).

■ To establish a nuisance claim, a plaintiff must show that: (1) the defendant acted with the intent of interfering with the use and enjoyment of the land by those entitled to that use; (2) there was some interference with the use and enjoyment of the land of the kind intended, although the amount and extent of that interference may not have been anticipated or intended; (3) the interference that resulted and the physical harm, if any, from that interference proved to be substantial; and (4) the interference was of such a nature, duration, or amount as to constitute unreasonable interference with the use and enjoyment of the land. *Williams v. Amoco Prod. Co.*, 241 Kan. 102, 117, 734 P.2d 1113 (1987).

The underdeveloped factual record in this case precludes summary judgment on plaintiffs' trespass and nuisance claims. The court reminds defendant that it has the initial burden to show that no material issue of fact exists and that it is entitled to judgment as a matter of law. Defendant has failed to carry this burden on these claims.

■ There exists no evidence in the record concerning the terms of Ralph Pagel's consent. Thus, the court cannot determine whether the purported placement of derailment debris or trash on plaintiffs' property exceeded the scope of that consent. Moreover, the court cannot determine as a matter of law whether any employee of defendant either was present or placed derailment debris or trash on plaintiffs' land. Defendant attaches as an exhibit a contract providing that Hulcher would perform the cleanup work and, citing that contract, states in its fact section that Hulcher performed the post-derailment cleanup. However, plaintiff contends that Ralph Pagel spoke with defendant's employees about the derailment cleanup and that defendant's employees were present during the cleanup. Viewing the facts in the light most favorable to plaintiff, as this court must on summary judgment, the court determines that there remains a dispute as to whether defendant's personnel or equipment in fact entered plaintiffs' property and, if so, the extent to which defendant may or may not have participated in the cleanup efforts. With respect to plaintiffs' nuisance claim, neither party has put forth evidence for the court to determine as a matter of law whether the alleged interference with the use and enjoyment of plaintiffs' land was unreasonable. Defendant's motion for summary judgment on these claims is denied.

## 2. Negligence and Negligence Per Se Claims

Defendant argues that plaintiffs cannot maintain a cause of action for either negligence or negligence per se. With respect to plaintiffs' negligence per se claim, plaintiffs allege that defendant violated the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.* and that, as a result, plaintiffs can assert a negligence per se claim. Plaintiffs, however, allege only that the discarding of the batteries violated CERCLA. The court already determined that plaintiffs' claims with respect to the batteries are time-barred. Accordingly, the court dismisses plaintiffs' negligence per se claim.

Regarding plaintiffs' negligence claim, defendant contends that plaintiffs cannot recover for negligent cleanup of the derailment debris because the derailment was not caused by any negligent act or omission of defendant. Defendant also argues that it is not responsible for any alleged negligence of Hulcher, the company it asserts performed the cleanup.

■ The same factual inadequacies discussed above preclude summary on plaintiffs' negligence claim. The parties dispute what involvement, in any, defendant had in the derailment cleanup. The court recognizes that there exists a contract providing that Hulcher perform the cleanup work. However, there is no evidence in the record, by testimony or otherwise, that no defendant employee participated in the cleanup, despite the fact that there was a contract with Hulcher. If defendant participated in the cleanup and undertook to carry out certain duties, defendant would be under an obligation to carry out that undertaking with reasonable care and without negligence. *Smith v. Massey–Ferguson, Inc.*, 256 Kan. 90, 112, 883 P.2d 1120 (1994). Absent knowledge regarding the extent of defendant's participation in the cleanup, if it participated at all, the court cannot grant summary judgment to defendant on plaintiffs' negligence claim.

### 3. Invasion of Privacy Claim

Defendant argues that it is entitled to summary judgment on plaintiffs' invasion of privacy claim. Plaintiffs' invasion of privacy claim rests on the theory that defendant failed to adequately control the derailment site to prevent curious onlookers from entering their property.

"As to privacy claims based upon a defendant's intrusion upon seclusion, a defendant is liable if he or she intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another and the intrusion would be highly offensive to a reasonable person." *Lowe v. Surpas Res. Corp.*, 253 F.Supp.2d 1209, 1237–38 (D.Kan.2003) (citing *Moore v. R.Z. Sims Chevrolet–Subaru, Inc.*, 241 Kan. 542, 738 P.2d 852, 856 (1987)).

■ Plaintiffs do not contend that any representative of defendant invaded plaintiffs' privacy, nor do plaintiffs mention any legal authority in support of the assertion that defendant should be held liable for any act of unknown persons described only as "curious onlookers." Indeed, defendant did not have the authority to control the access of complete strangers onto plaintiffs' farm, an authority which only plaintiffs could exercise. Because defendant had no legal authority to order any "curious onlooker" to leave plaintiffs' farm, it cannot be held liable for failing to control access to the farm by members of the general public. This court will not imply a duty on the part of defendant to perform such an unauthorized act. Defendant is entitled to summary judgment on plaintiffs' invasion of privacy claim.

### 4. Breach of Contract and Fraudulent Misrepresentation Claims

Plaintiffs assert a claim for breach of implied contract. Specifically, plaintiffs allege that Ralph Pagel received an oral assurance from defendant's employee that a landscaper would put the property back into the same condition it was before the accident. Defendant points out that this purported oral assurance was made a day after Ralph Pagel gave permission to enter the land and perform derailment cleanup. Defendant argues that such an oral assurance is no promise that defendant itself would clean up the debris or be answerable for damages and that, even if the assurance is construed as such a promise, it was a bare promise unsupported by valuable consideration.

■ The question of whether an implied contract exists under Kansas law is typically a question of fact for the jury. *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 537 (10th Cir.1995). Summary judgment is not precluded, however, where there is no showing of liability as a matter of law, where there are no essential facts in dispute, and where the plaintiff presents only evidence of his own unilateral expectations. *Kastner v. Blue Cross & Blue Shield of Kan., Inc.*, 21 Kan.App.2d 16, 24, 894 P.2d 909 (1995) (discussing law of implied contracts in employment context).

■ In this case, a reasonable jury could conclude that an oral assurance by defendant, that a landscaper would put the property back into the same condition it was before the accident, carried with it an implied duty to remove trash and derailment debris from plaintiffs' property. Moreover, the fact that such an assurance was made a day after Ralph Pagel already gave permission to enter plaintiffs' land does not conclusively establish that there was no valuable consideration. Again, the parties have failed to put before the court evidence of the terms of Ralph Pagel's original consent. Also lacking from the record are the circumstances under which the purported oral assurance was made. Without such evidence, the court cannot ascertain whether the parties intended to form a legally enforceable contract but merely failed to express the terms with sufficient particularity. For example, the assurance may have been made to induce Ralph Pagel's *continued* consent to be on the property, in which case consideration would be present, or the assurance could simply have been an unenforceable gratuitous promise. The insufficient record before the court precludes summary judgment on this claim.

■ For the same reasons, summary judgment is precluded on plaintiffs' fraudulent misrepresentation claim. Actionable fraud includes an untrue statement of fact, known to be untrue by the party making it, which is made with the intent to deceive or recklessly made with disregard for the truth, where another party justifiably relies on the statement and acts to his or her injury and damage. *Albers v. Nelson*, 248 Kan. 575, Syl. ¶ 5, 809 P.2d 1194 (1991).

■ Defendant has failed to show that no material issue of fact exists and that it is entitled to judgment as a matter of law on this claim.[2] In other words, there exists no evidence in the record whether the purported oral assurance was known to be true or untrue by the party making it, or whether the assurance was made with or without the intent to deceive or with disregard for the truth. Plaintiffs are reminded that, at trial, they must prove fraudulent misrepresentation by clear and convincing evidence. *Britvic Soft Drinks Ltd. v. ACSIS Techs., Inc.*, 265 F.Supp.2d 1179 (D.Kan.2003). It is questionable whether plaintiffs can carry their burden on this claim at trial. However, at this juncture, the court declines to grant summary judgment.

**IT IS THEREFORE ORDERED** that the Motion of Defendant Burlington Northern Santa Fe Railway Company for Summary Judgment (Doc. 20) is granted in part and denied in part. Specifically, all claims relating to defendant's discarding of the batteries are time-barred. The court also dismisses plaintiffs' invasion of privacy claim. With respect to the post-derail-

---

2. Defendant asserts that plaintiffs' misrepresentation claim is barred by *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 4 P.3d 1149 (2000). In *Wilkinson*, the court held that the tort of negligent misrepresentation applies only to cases of misrepresentation of factual, commercial information, not to statements of future intent. However, plaintiffs do not assert negligent misrepresentation and, as such, *Wilkinson* is inapplicable.

ment activities, the following claims remain in this lawsuit: trespass, negligence, nuisance, misrepresentation, and breach of implied contract.